UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOSHUA HERRIDGE, § § Plaintiff, § § v. § § MONTGOMERY COUNTY, TEXAS and § JIMMY WILLIAMS, individually and in his § official capacity as Fire Marshal for § Montgomery County, Texas, § § Defendants. § | Civil Action No. |

## VERIFIED COMPLAINT

Plaintiff Joshua Herridge, by counsel, comes now and avers the following:

## INTRODUCTION

1. This is a civil rights action brought under 42 U.S.C. § 1983, challenging the constitutionality of Montgomery County, Texas policy of barring literature distribution and sign displays on public sidewalks and public ways bordering a portion of Lake Robbins Drive in Montgomery County so as preclude Plaintiff Joshua Herridge from sharing his religious expression in traditional public fora.

2. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff Joshua Herridge seeks injunctive relief, declaratory relief, and nominal damages, litigation costs, and attorney fees, against Defendants Montgomery County and Jimmy Williams, individually, and in his official capacity as Fire Marshal for Montgomery County, Texas.

3. The action is premised on claims brought under the First and Fourteenth Amendments

COMPLAINT, page 1

to the United States Constitution and pertain to the right to free speech and the right to due process.

4. Defendants' policy and actions, in interpreting, applying, and enforcing Texas Penal Code 42.03 to bar expressive activity, have deprived, and will continue to deprive, Plaintiff Joshua Herridge of his fundamental constitutional rights.

5. Every act of Defendants alleged herein was committed by them under the color of state law and authority.

## JURISDICTION AND VENUE

6. This action raises federal questions relating to the First and Fourteenth Amendments to the United States Constitution and federal statute 42 U.S.C. § 1983.

7. This Court has original jurisdiction over the federal claims per 28 U.S.C. §§ 1331 and 1343.

8. This Court has authority to grant the requested injunctive relief under 28 U.S.C. § 1343, the requested declaratory relief under 28 U.S.C. §§ 2201-02, the requested damages under 28 U.S.C. § 1343, and the requested litigation costs and attorney fees under 42 U.S.C. § 1988.

9. The appropriate venue for this cause is the Southern District of Texas under 28 U.S.C. § 1391(b), because Defendants reside in this district and all actions giving rise to this action took place in this district.

## PARTIES

10. Plaintiff Joshua Herridge ("Herridge") is a resident of Livingston, Texas.

11. Defendant Montgomery County, Texas ("Montgomery County") is a municipal governmental authority, a county and a subdivision of the State of Texas.

12. Defendant Jimmy Williams ("Marshal Williams") is sued individually and in his

official capacity as Fire Marshal for Montgomery County. Marshal Williams has full police authority and is responsible for enforcing the laws and policies of Montgomery County and Texas.

## STATEMENT OF FACTS

### *Herridge Wants to Engage in Religious Speech*

13. Herridge is a Christian who is compelled to go out in public and tell others about the merits of his religious beliefs.

14. He shares religious, evangelistic message that everyone has sinned before God and deserves condemnation, but Jesus Christ died on the cross for sins and grants salvation to those who repent and believe in him.

15. To maximize his evangelistic opportunities, Herridge travels to public areas near well-attended events so he can share his message with many people in a short period of time. He frequently shares his faith at public events and outside of musical concerts in numerous places in Texas.

16. Herridge uses various means to convey his Christian faith. When he is in an area where people are not stationary and are walking by him, he often holds up signs and hands out literature to get his message out.

17. The signs he uses present some succinct point, usually referencing scripture from the bible. His literature contains a more detailed explanation of his faith and its import. He hopes people will take the literature and read it later.

18. When conducting this expressive activity, Herridge does not block passageways. He positions himself and his sign in spots that are not part of main pathways.

19. Herridge does not force his literature on anyone.

COMPLAINT, page 3

20. He does not draw crowds with his expressive activity, nor does he try to draw crowds.

21. Herridge does not seek signatures or solicit money or conduct any other activity that would require people to stop.

22. He does not try to offend anyone with his message.

23. Herridge especially wants to share his Christian message on public sidewalk and grassy ways bordering the south side of Lake Robbins Drive in The Woodlands in Montgomery County near the Cynthia Woods Mitchell Pavilion ("Pavilion") and the intersection with Six Pines Drive. He wants to stand in this publicly owned location and hold up signs and hand out literature, out of the way of pedestrian traffic, to convey his religious message to attendees of events at the Pavilion amphitheater as they are walking and heading into the event.

### *Montgomery County Enforces Policy Banning Herridge's Speech*

24. On May 18, 2019, Herridge drove from his home in Livingston to The Woodlands. He learned ZZ Top was having a concert that evening at the Pavilion amphitheater and suspected the popular band would generate a significant number of attendees for the event. Herridge planned to share the gospel with as many people as he could that night.

25. Herridge intended to share his Christian message on public sidewalk and grassy ways bordering Lake Robbins Drive close to Six Pines Drive, believing he could reach many people from that location.

26. Lake Robbins Drive and the bordering sidewalk and grassy curtilage are owned and maintained by Montgomery County.

27. Herridge pulled into a parking lot near the Pavilion a little after 5:00 p.m., grabbed his sign and literature, and walked over to the intersection of Lake Robbins Drive and Six Pines Drive

in front of a sign for the Pavilion.

28. Herridge believed the corner area on either side of the sidewalk or the grassy area would be an ideal spot because he could share his message without getting in anyone's way.

29. As he approached the intersection, Herridge noticed several police officers sitting on a bench. Hoping to avoid any possible conflict, Herridge informed the officers of his intentions to share a religious message in the public next to the street and close to the corner of Lake Robbins Drive and Six Pines Drive.

30. One of the police officers responded and told Herridge that he could not conduct his expressive activity in the space adjacent to Lake Robbins Drive, indicating that all of the property is privately owned.

31. Herridge asserted his belief that he should be able to speak in the area due to its public nature. The officer apprised that he would contact his supervisor and Herridge welcomed the opportunity to speak with him.

32. Herridge waited for several minutes at the corner, along with a couple of police officers, until Marshal Williams came to the scene to visit with him.

33. Marshal Williams presented himself as a police officer, wearing a polo shirt bearing the word "POLICE" on it. He was also carrying a Motorola 2-way radio and a firearm.

34. Following an exchange of pleasantries, Herridge referenced his prior conversation with the other police officer and inquired whether the area is public. Marshal Williams answered that the Township and the Pavilion own the property.

35. Continuing, Marshal Williams directed Herridge to go across Lake Robbins Drive, on the north side of the street, on the northeast corner, to convey his message.

36. Herridge did not want to move to that corner because he knew he could not reach near as many people with his message in the new location.

37. Marshal Williams added that Herridge's speech could cause someone to slow down in the street and get run over by a vehicle. Hearing this, Herridge offered to move away further down from the corner toward the event center, but Marshal Williams informed that he could not be on any portion of the property further west because he would be on Pavilion property.

38. Herridge clarified that he could stay on the grass, out of the way, but this alternative was not sufficient. Marshal Williams reiterated that Herridge should go across Lake Robbins Drive on the north side to carry on with his expressive activity.

39. Herridge objected to the request, asserting his right to speak in a public area. Marshal Williams disagreed, accusing Herridge of obstructing a law enforcement operation by standing and sharing his message in the grassy area.

40. Marshal Williams repeated that Herridge could speak on the other side of Lake Robbins Drive, referring to the area as "more than enough accommodations" for Herridge's speech.

41. Herridge corrected Marshal Williams, reminding him that there were actually a lot more people on the south side of Lake Robbins Drive, where the Pavilion is located.

42. Herridge asked if he would be arrested if he did not leave. Marshal Williams replied that the Pavilion does not allow for any solicitation or for anyone to congregate in the area, and his activity would "impede the operation."

43. Marshal Williams repeated the claim that someone could stop and get run over by a vehicle, and that they had created a space on the other side of Lake Robbins Drive where people

like Herridge could go. The marshal reminded Herridge that he was interfering with the operation, charactering Herridge's activity as a violation of state law.

44.  Marshal Williams told Herridge that he was asking him "cooperate" and go across Lake Robbins Drive to the north side of the street. Herridge was not willing to walk over there unless he was forced to go.

45.  Herridge advised Marshal Williams that he would walk away if the officer was giving him an order to leave. Marshal Williams replied: "Go ahead and walk away. I'm giving you an order to leave."

46.  Herridge asked Marshal Williams his name. He provided it and then curtly warned Herridge as he pointed toward to the other side of Lake Robbins Drive: "I've given you the order. You asked for it. Walk away!"

47.  Fearing arrest, Herridge briskly walked away like he was ordered to do.

48.  Herridge attempted to share his views on the north side of the street for 20 minutes or so, but due to low number of people that came by in the remote location, he found the effort futile and departed.

*Herridge Seeks Relief from the Speech Restriction to No Avail*

49.  Herridge was stymied by Montgomery County, but maintained his desire to share his Christian faith on public sidewalk and grassy area adjacent to Lake Robbins Drive while events occur at the Pavilion.

50.  Through counsel, Herridge sent a letter to Montgomery County officials, seeking to resolve the conflict without litigation. He explained his constitutional right to speak on the public way on the south side of Lake Robbins Drive as well as the impropriety of the ban on speech.

COMPLAINT, page 7

51. The letter sought relief from the restriction imposed on Herridge's expression. He did not ask for monetary damages or attorney fees. Due to events coming up at the Pavilion, Herridge asked Montgomery County to respond to his request within two weeks of the letter.

52. On June 19, 2019, the Montgomery County attorney's office responded, disputing any infringement on Herridge's constitutional rights. Referencing a marked-up satellite aerial photograph of the area enclosed with the letter, the attorney described the sidewalk on the south side of Lake Robbins Drive and east of Six Pines Drive as a restricted area that must remain open to pedestrian traffic. The author elaborated that Montgomery County has maintained a policy to disallow expressive activity in the area because of the potential for obstruction, analogizing religious speech with street musicians, ticket sellers, and vendors, and the like.

53. Herridge was disappointed in the response. But he noticed that the author described the purpose of the policy was to curb activities that could obstruct passageways. Consequently, Herridge believed a clarification of his activities could lead to a possible resolution.

54. On July 16, 2019, Herridge sent a second letter through counsel, clarifying that he only wants to hand out literature and display a sign and would only conduct those activities in the grassy curtilage between the sidewalk and Lake Robbins Drive, just as he expressed to the officer on the scene. Herridge hoped this clarification would alleviate Montgomery County's concerns and free-up the requested space for his speech.

55. However, Herridge did not receive the assurance he sought. By letter dated July 24, 2019, Montgomery County informed Herridge that his planned activities involving literature distribution and sign display would not be allowed even if it took place solely in the grassy area. The attorney attached a photograph showing people standing in line in front of Pavilion Event

Center building and claimed any sort of expression on the sidewalks at issue would be problematic. The attorney for Montgomery County warned in conclusion: "To be clear, if Mr. Herridge attempts to conduct activities from the area where he was asked to move from on May 18, 2019, again during an event, he will again be asked to move back across the street."

### *Herridge Continues to Suffer from Montgomery County's Ban on his Speech*

56. Herridge was discouraged by this response, knowing any congestion in front of the event center is not representative of the places where he wants to speak. But his desire to spread the gospel has not waned. He is still eager to return to the public areas bordering Lake Robbins Drive and share his faith during events at the Pavilion. For fear of expulsion and arrest, he has not attempted to do so since he was stopped from speaking under threat of arrest on May 18, 2019.

57. Defendants' application and enforcement of policy banning expressive activity, including sign display and literature distribution, and Herridge's corresponding fear of criminal sanction, severely limits Herridge from engaging in constitutionally-protected expression on public sidewalks and other public ways bordering Lake Robbins Drive in Montgomery County.

58. If not for Defendants' application of its policy to silence Herridge's speech on public ways bordering Lake Robbins Drive, Herridge would return to the area and convey his message.

59. The chill on the exercise of Herridge's constitutional rights is an irreparable injury to him and for which there is no adequate remedy at law.

### FIRST CAUSE OF ACTION

### Violation of Freedom of Speech

60. Herridge re-alleges and incorporates herein by reference all preceding paragraphs.

61. Herridge's expression of religious viewpoints through religious literature and sign

display on public property constitutes protected speech under the First Amendment to the United States Constitution.

62. Defendants' policy of banning expressive activity in areas bordering Lake Robbins Drive, on its face and in application and enforcement thereof to Herridge's protected speech:

    a.    restrain constitutionally-protected speech in advance of its expression;

    b.    restrict freedom of speech based on vague and subjective criteria;

    c.    chill the free speech of Herridge and third-party citizens;

    d.    lack narrow tailoring, fail to achieve any legitimate government purpose, and fail to leave open reasonable alternative avenues for expression;

    e.    and amount to an unreasonable ban on protected expression.

63. Defendants have no legitimate reason justifying their application of the policy to restrict constitutional freedoms.

64. Defendants' policy banning expressive activity, on its face and its application and enforcement thereof to Herridge's protected speech, violate the Free Speech Clause of the First Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Herridge respectfully prays the Court grant the equitable and legal relief set forth in the prayer for relief.

## SECOND CAUSE OF ACTION

### Violation of Due Process

65. Herridge re-alleges and incorporates herein by reference all preceding paragraphs.

66. Defendants' policy is vague and lacks sufficient objective standards to restrain the

discretion of police officers. The vague nature of the policy gives Defendants opportunity to curtail disfavored speech in an *ad hoc*, arbitrary, and discriminatory manner.

67. Defendants have no legitimate reason that can justify their vague policy.

68. Defendants' policy, on its face and in its application, violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Herridge respectfully prays the Court grant the equitable and legal relief set forth in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Herridge respectfully prays for relief in that this Court:

A. Assume jurisdiction over this action;

B. Enter a judgment and decree declaring that the actions taken by Defendants in banning expressive activity and particularly Herridge from distributing literature or displaying a sign on public ways bordering Lake Robbins Drive on May 18, 2019, violated Herridge's constitutional rights, namely, his rights to free speech and due process;

C. Enter a judgment and decree declaring that Defendants' policy of banning expressive activity on public ways bordering Lake Robbins Drive is unconstitutional on its face and as applied to Herridge's religious expression in violation of Herridge's rights as well as the rights of third parties not before the Court, as guaranteed under the First and Fourteenth Amendments to the United States Constitution;

D. Enter a preliminary and permanent injunction enjoining Defendants, their agents, officials, servants, employees, and all persons in active concert or participation with them, or any of them, from applying or enforcing its policy to ban speakers, including Herridge, from expressing

views via literature distribution and/or sign display on public ways bordering Lake Robbins Drive;

E. Adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment;

F. Award Herridge nominal damages in the amount of $1.00 for the incident on May 18, 2019, when he was unconstitutionally prohibited from handing out literature or displaying a sign in traditional public fora;

G. Award Herridge his costs and expenses of this action, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988 and other applicable law; and

H. Grant such other and further relief as appears to this Court to be equitable and just.

Respectfully submitted,

| | |
|---|---|
| s/Nathan W. Kellum<br>Nathan W. Kellum*<br>TN BAR #13482; MS BAR #8813<br>CENTER FOR RELIGIOUS EXPRESSION<br>699 Oakleaf Office Lane, Suite 107<br>Memphis, TN 38117<br>(901) 684-5485 telephone<br>(901) 684-5499 fax<br>nkellum@crelaw.org<br><br>Attorney for Plaintiff Joshua Herridge<br>*Motion for Admission *Pro Hac Vice* and Motion for Leave to Appear as Attorney-in-Charge filed concurrently | //ss// peter costea<br>_____<br>Peter Costea<br>TBN 04855900<br>Federal ID 13622<br>4544 Post Oak Place, Suite 350<br>Houston, Texas 77027<br>Tel. 713-337-4304<br>Fax 713-237-0401<br>peter@costealaw.com<br>Attorney for Plaintiff Joshua Herridge |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2019, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, and that a copy of the foregoing will be delivered to a process server for service on defendants.

s/Nathan W. Kellum
Attorney for Plaintiff

## VERIFICATION OF COMPLAINT

I, Joshua Herridge, a citizen of the United States and a resident of Livingston, Texas, hereby declare under penalty of perjury that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged therein are true and correct.

_____
Joshua Herridge