United States District Court
Southern District of Texas

**ENTERED**

September 12, 2023

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JOSHUA HERRIDGE, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-CV-04259 |
| | § | |
| MONTGOMERY COUNTY, TEXAS, and | § | |
| JIMMY WILLIAMS, | § | |
| | § | |
| *Defendants.* | § | |

**ORDER**

## I.   Background

This case involves the enforcement of an unwritten policy that has been applied against Plaintiff Joshua Herridge by Defendants Montgomery County, Texas and Jimmy Williams, the Fire Marshal for Montgomery County, Texas. The policy prevents him from preaching the gospel at a specific high traffic corner (Lake Robbins Drive and Six Pines Drive) when large-scale events are being held at the Cynthia Woods Mitchell Pavilion in The Woodlands, Texas. While the Pavilion itself is jointly owned by the township of The Woodlands and the Cynthia Woods Mitchell Pavilion, the sidewalk and grassy curtilage that are at issue here are public property. Herridge sought to preach in this high traffic because the location had greater visibility and traffic and he could share his message with more people at that location. For that very same reason (the large number of people in a small, crowded area), law enforcement officers found that location to be a dangerous corner for Herridge to spread the word due to the increased congestion. The Defendants did provide nearby alternative locations, but Herridge found these alternatives to be unacceptable.

Since a resolution could not be reached, Herridge filed this lawsuit. The Court addressed the issue of delivering sermons on this congested corner via competing summary judgment motions and eventually ruled for the Defendants. Herridge appealed this decision and the Court's decision was affirmed. However, this Court's decision was based solely on a factual scenario based upon Reverend Herridge preaching. On appeal, Herridge emphasized different issues—specifically whether he could pass out leaflets and/or engage in sign holding presumably at the same southwest corner of the same intersection. The Fifth Circuit, while affirming this Court's ruling concerning preaching, noted that Herridge had not raised the issue of signage and/or pamphleteering here. That being the case, it remanded the case for further consideration of these points.

The parties have now sought this Court's decision on this different conduct—again via cross-motions for summary judgment.

## II.    Summary Judgment Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the nonmovant to show that the Court should not grant the motion. *Celotex Corp.*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for

2

the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

Defendants have filed a Supplemental Motion for Summary Judgment. (Doc. No. 53-1, 56). The Plaintiff has filed what he has labeled a "Supplemental Memorandum in Support of Motion for Summary Judgment Following Remand." (Doc. No. 54). The Defendants have also responded to Plaintiff's motion. (Doc. No. 58). Thus, the parties feel the Court is in a position to rule.

**III.    Analysis**

To understand the problem facing the Court, one only need review the two concurring opinions that are a part of the Fifth Circuit's prior opinion. Judge Ho, quite accurately, described this case as one "that implicates fundamental freedoms secured by our Constitution." It is without question part and parcel of the rights of all Americans to "freely exercise" their religion and a component of that freedom is the right to disseminate and espouse one's beliefs and doctrines. *Heffon v. Int'l Soc. For Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981). Secondly, Judge Ho emphasized that while a governmental unit may for legitimate reasons restrict that expression, any such restriction must be tailored to serve a significant governmental interest. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). The safety of concert goers is a legitimate concern for Montgomery County, and it remains a concern whether Herridge is preaching, pamphleteering, or displaying signs.

3

While public safety is certainly a concern, with regard to the current issues, Defendants seem to make no attempt to distinguish between their rules concerning preaching on the corner from their rules concerning distributing literature or displaying signage (either on or near the corner in question). Judge Ho's concurrence quotes Justice Blackmon's concurrence in *Heffron* where he recognizes the commonsense differences between literature distribution and sales. *Heffron*, 452 U.S. at 665. Judge Graves in his concurrence made the same distinction and described the differences as being "important." This Court, as well, sees marked differences between displaying signs or passing out literature and preaching. The latter clearly anticipates and hopes for a crowd to gather while the former anticipates passersby to either take (or reject) the offered literature or view (or ignore) the signage on their way into the venue. The danger of a gathering crowd in a high traffic area seems markedly different.

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'" *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) (quoting U.S. Const., Amdt. 1). To determine whether a government action violates the First Amendment, the Court must: (1) assess whether the nature of the plaintiff's activities deserve First Amendment protection; (2) identify the type of forum involved; and then (3) determine whether the government's justification for the restriction satisfies the appropriate standard. *Watkins v. City of Arlington*, 123 F.Supp.3d 856, 863 (N.D. Tex. 2015) (citing *Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 797 (1985)). Here, the parties agree that Herridge's speech, in the form of leafleting, and holding signs, is considered protected speech under the First Amendment. (*See* Doc. No. 39 at 7; Doc. No. 34 at 8). Further, the parties agree that the grassy area and sidewalk around the Pavilion

4

where Herridge wants to preach constitutes a public forum under First Amendment law. (*See* Doc. No. 34 at 8).

In addition, Herridge concedes that the restriction is not content based. (*See* Doc. No. 35 at 17; *see also* Doc. No. 34, Ex. 3 [Herridge's Deposition] at 45 [Q: "Do you believe that the content of your activity or your speech was the reason why you were asked to move on May 18th, 2019?" A: "I have no reason to believe that."]). Further, the summary judgment evidence shows this to be true. (*See* Doc. No. 34, Ex. 5 at 2–3 [letter informing Herridge that the Policy does not allow "any sort of activity"]; Doc. No. 34, Ex. 1 [Williams's affidavit]). When speech regulations are content-neutral, a less exacting level of scrutiny than strict scrutiny applies. "[A] regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neural interests but . . . it need not be the least restrictive or least intrusive means of doing so." *Doe I v. Landry*, 909 F.3d 99, 111 (5th Cir. 2018) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989)). Stated differently, "to pass constitutional muster, a time, place and manner regulation must be content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Denton v. City of El Paso, Tex.*, 475 F.Supp.3d 620, 632 (W.D. Tex. 2020) (cleaned up).

There is a dispute between the parties as to whether the Policy was promulgated by the Pavilion or by the County, but regardless, it is this policy that is being applied against Herridge, so the Court must subject it to First Amendment scrutiny.

## A.    Is There a Significant Government Interest?

First, the Defendants must show that the Policy serves a significant government interest. They argue that the government interest is that in public safety. According to the Defendants,

5

both in argument and in summary judgment evidence, the Policy is meant to ensure that foot traffic does not stop in busy areas around the Pavilion. The evidence shows that, when there is congestion of the concert crowd in front of the Pavilion, pedestrians may "spill out into the street . . . create[ing] an unacceptable risk for accident, injuries and death to pedestrians and motorists alike." (Doc. No. 34, Ex. 1 at 1). Herridge acknowledges that public safety and obstruction avoidance are "generically" significant interests, (*see* Doc. No. 39 at 6 (citing *Knowles v. City of Waco, Tex.*, 462 F.3d 430, 434 (5th Cir. 2006)). Herridge also does not dispute that the Defendants have a significant interest in protecting public safety, so this element is conceded, and the Court sees no need to address it further.

## B.    Is the Policy Narrowly Tailored?

Next, the Defendants must show that the Policy is narrowly tailored to serve the government interest described above. *See Denton*, 475 F.Supp.3d at 632. "If 'a substantial portion of the burden on speech does not serve to advance' the ordinance's stated goals, then the ordinance is not narrowly tailored." *Knowles*, 462 F.3d at 434 (quoting *Ward*, 491 U.S. at 799). Nevertheless, this does not mean that the policy must be the "least restrictive or least intrusive means" of protecting public safety. *Landry*, 909 F.3d at 111. A time, place, or manner restriction is "narrowly tailored" where "a substantial government interest . . . would be achieved less effectively absent the regulation." *United States v. Albertini*, 472 U.S. 675, 689 (1985). In support of their contention that the policy is narrowly tailored, the Defendants point to the following facts: (1) the policy applies only to the one-block portion of sidewalk and grassy curtilage on the south side of Lake Robbins Drive, between Six Pines Drive and Pavilion property; (2) the policy specifically allows for organized activities across the street from the

6

Pavilion on other corners of the intersection; and (3) the policy was only in effect when the Pavilion had its largest events.

Previously, the Defendants provided evidence that Herridge's preaching caused traffic congestion. Williams stated in his affidavit that he had seen Herridge previously and that Herridge's "public sermons do tend to make people stop or slow down to listen or at least try to figure out what this person is talking about." (Doc. No. 34, Ex. 1 at 2). In addition, Herridge himself acknowledged that it is not uncommon for people to stop and listen to what he says when he is preaching, both in general and specifically when he has preached at the Pavilion. (*See* Doc. No. 34, Ex. 4 at 16–17) [stating that passing vehicles would stop and listen to him when he preached outside his church in Livingston, Texas]; *id.* at 25–26 [recalling that he once had a physical altercation at the Pavilion when a passerby hit him in the back of the head; *id.* at 30 [stating that he has had "hundreds" of people stop to listen to him preach at various events]). According to Williams, when there are many people arriving to a large event at the Pavilion and people stop or slow down, it "creates the danger of congestion and causes risks to public safety if it takes place in the congested areas on the pathways southwest of the intersections where the Officers are working to keep pedestrians moving to the main gates." (Doc. No. 34, Ex. 1 at 2).

Defendants either do not recognize the difference in the activities now under scrutiny or they recognize the difference and refuse to attempt to tailor their restrictions to the activity under consideration. While they have supplemented their presentation with an updated version of Williams' affidavit, it does no more than express the fact that the authorities consider leafleting and displaying signs to be just as problematic as preaching and thus require the same solution. This Court disagrees. First, the Court finds many of the statements in this supplemental affidavit

to be conclusory and speculative. Second, there are absolutely no underlying facts to support what amounts to a leap of faith.

When a governmental agency seeks to curtail or restrain someone in the exercise of a well-established First Amendment right, it must be able to justify these restraints with actual facts. Moreover, as Judge Ho notes, any restriction must be tailored to the interest.

The Court agrees and therefore grants Plaintiff's Motion for Summary Judgment and denies the motion of the Defendants as it finds the restrictions are not tailored to Herridge's proposal to display signage or distribute leaflets.

This Court would be remiss if it did not add that, while it has granted Plaintiff's motion and denied the Defendants' motion, it does find the Defendants have raised some valid concerns. Clearly there are locations at the very corner of the intersection where Herridge could create a dangerous situation with his signage. The same could be true if he passed out literature in the immediate path of people trying to cross the intersection and avoid traffic. One would hope that Herridge (and others) would exercise commonsense and respect for the safety of others while exercising his own First Amendment rights. If his presence (or that of any others) proves problematic and the Defendants tailor a policy (as opposed to the blanket prohibition it proposed here) to fit the situation, that might present this Court with a different picture.

The Court finds that Plaintiff has met the criteria for the injunction he seeks as to leafleting and signage. "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc.* v. *MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of

8

hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.*

### Factors One and Two

It almost goes without saying that when a governmental unit improperly curtails a citizen in the exercise of a right protected by the First Amendment that the person has suffered an irreparable injury and that the injury is one that can only be alleviated by injunctive relief. Defendants do not contest otherwise.

### Factor Three

The balancing of the hardships also favors the Plaintiff here. If the injunction is not granted, he will suffer irreparable damage to his right to practice his religion. The hardship on the Defendants is minimal. At worst, the Defendants will have to accommodate Herridge while expending extra effort and resources to protect concert patrons.

### Factor Four

This factor presents a much closer call. If one believes the Defendants' evidence—which this Court clearly did (and does) as it pertains to preaching—the ability to limit points where gathering crowds might face oncoming traffic is a significant governmental interest that benefits public safety. It is not, however, the only public interest at stake here. The public always has an interest in the protection of the First Amendment rights of a fellow citizen. When one citizen's rights are restricted unjustly, all citizen's rights are diminished—at least theoretically.

### IV.  Conclusion

While the Court finds that this last factor presents competing positions, it finds the first three facts clearly favor the issuance of an injunction. That being the case, the Defendants are hereby enjoined from enforcing their current restrictive policy against Herridge to the extent that

9

he (or anyone else similarly situated) is merely passing out pamphlets or displaying signs. It sees no need for a bond in this case.

As noted above, the Court hopes that Herridge and his followers will exercise courtesy and concern for the safety of all when exercising these rights.

SIGNED at this 12 day of September, 2023.

Andrew S. Hanen
United States District Judge

10